**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John William DALTON, Defendant–
Appellant.**

No. 91–1149.

United States Court of Appeals,
Tenth Circuit.

March 26, 1992.

---

Charles Szekely, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colo., for defendant–appellant.

Joseph Mackey, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff–appellee.

Before SEYMOUR and TACHA, Circuit Judges, and BRIMMER, District Judge.*

SEYMOUR, Circuit Judge.

■ John Dalton, an attorney, accepted a firearm as a fee from a client, who was a licensed firearms dealer and who had converted the weapon into a machinegun in 1989. Dalton was found guilty of possessing and transferring an unregistered firearm in violation of the National Firearms Act, I.R.C. §§ 5861(d), (e) (NFA). A separate criminal statute prohibits the possession of *any* machinegun made after that statute's effective date in 1986. 18 U.S.C. § 922(*o*) (1988). It is undisputed that the government will not permit the registration of machineguns covered by section 922(*o*), and will not accept the tax which would otherwise be required by the registration requirements of the National Firearms Act. Dalton contends that due process bars his conviction under a statute which punishes his failure to register when that registration is precluded by law. We agree and reverse.

Dalton was convicted of violating two provisions of the NFA: I.R.C. § 5861(d), which prohibits the receipt or possession of an unregistered firearm; and I.R.C. § 5861(e), which prohibits the transfer of a firearm in violation of the applicable transfer provision. The transfer provision requires the transferor to apply for registration of the firearm to the transferee and to pay a transfer tax. *See id.* § 5812.[1] Un-

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. Section 5812(a) provides:
"A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner as the Secretary may by regulations prescribe; (5) the firearm is identified in the application form in such manner as the Secretary may by regulations prescribe; and (6) the application form shows that the Secretary has approved the transfer and the registration of the firearm to the transferee. *Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of the law.*"
I.R.C. § 5812(a) (emphasis added).

der 18 U.S.C. § 922(*o*), however, it is unlawful to transfer or possess the firearm at issue in this case because the weapon was converted into a machinegun after the statute's effective date of May 19, 1986.[2] The NFA specifically provides that all applications to register a firearm will be denied if it is illegal to possess or transfer the weapon. *See* I.R.C. § 5812 (registration application denied "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law"). As a result, compliance with the registration requirements referred to in sections 5861(d) and (e) is impossible with this weapon. Dalton concedes that the government could have charged him under section 922(*o*), which criminalizes possession. Rec., vol. V, at 51. However, the government instead chose to proceed under section 5861 and charge him with possessing an unregistered gun.

Dalton contends that the gravamen of a section 5861 violation is the possession and transfer of an *unregistered* gun, and that it violates fundamental fairness to convict him for failing to do an act which everyone agrees he could not perform. He made this argument to the district court without success. In rejecting Dalton's analysis, the court stated its position that a violation of section 5861 is grounded on possession rather than on the failure to register. "[I]t's the act of possession, not the act of registration which is the gravamen of the offense. It is the act of possession of a firearm that's not registered. It doesn't matter who or why." Rec., vol. V, at 62.

We disagree with this analysis, which has been specifically rejected by the Supreme Court, albeit in a slightly different context. In *Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), the defendant was convicted under an earlier version of the NFA which made possession of an unregistered firearm and failure to register separate offenses. *See id.* at 89, 88 S.Ct. at 726. The defendant was charged with possessing an unregistered firearm rather than with failing to register. He contended that satisfying the obligation to register imposed by the statute under which he was charged would have violated his Fifth Amendment privilege against self-incrimination. In response, the government adopted the same position taken by the district court here, arguing that the defendant's offense was the mere *possession* of an unregistered firearm. *See id.* at 90–91, 88 S.Ct. at 726–27.

The Supreme Court disagreed, finding it significant that the possession offense was defined as the possession of a firearm which had not been registered as required by the statutory provisions. The Court stated that this reference to registration "suggest[s] strongly that the perimeter of the offense which it creates is to be marked by the terms of the registration requirement imposed." *Id.* at 93, 88 S.Ct. at 728. After discovering no persuasive evidence to the contrary, the Court rejected the government's argument that the gravamen of the crime of possessing an unregistered weapon is the possession and not the failure to register. "We find this supposed distinction entirely unpersuasive, for, as we have found, the possession of a firearm and a failure to register are equally fundamental ingredients of both [the offense of failing to register and the offense of possessing an unregistered firearm]." *Id.* at 95, 88 S.Ct. at 729.[3]

---

**2.** Section 922(*o*) provides:
"(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
(2) This subsection does not apply with respect to—

.    .    .    .    .

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect."
The machinegun prohibition became effective May 19, 1986. *See* Pub.L. No. 99–308, § 110(c), 100 Stat. 449, 461 (1986).

**3.** Based on this construction of the Act, the Court held that a properly made claim of the constitutional privilege against self-incrimination provided a complete defense to prosecutions either for failure to register or for possession of an unregistered firearm. *See* 390 U.S. at 100, 88 S.Ct. at 732. In response to this decision, Congress amended the NFA, which now provides that no information obtained through compliance with the registration requirements shall be used in a criminal proceeding against the person whose compliance is required. *See* I.R.C. § 5848(a) (1988).

Like the statute at issue in *Haynes*, the statute under which Dalton was convicted penalizes possession or transfer in violation of registration requirements elsewhere imposed by the Act. Under the analysis in *Haynes*, the failure to register is a fundamental ingredient of these offenses. Because the crimes of which Dalton was convicted thus have as an essential element his failure to do an act that he is incapable of performing, his fundamental fairness argument is persuasive. *Cf. United States v. Spingola*, 464 F.2d 909, 911 (7th Cir.1972); 1 W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 3.3(c) at 291 (1986) ("one cannot be criminally liable for failing to do an act which he is physically incapable of performing").

Dalton has supplemented his argument on appeal by directing us to *United States v. Rock Island Armory*, 773 F.Supp. 117 (C.D.Ill.1991), a case decided while this appeal was pending, in which the court rejected an analogous prosecution under the NFA employing a different but related analysis. In *Rock Island Armory*, the defendants were charged with manufacturing and delivering machineguns into interstate commerce in violation of the registration requirements of the National Firearms Act. Undertaking a thorough review of the relevant legislative history and case law, the court pointed out that this Act was passed and has been consistently upheld under the power of Congress to raise revenue. The court reasoned that because the possession of machineguns made after 1986 is illegal under section 922(*o*) and the government will therefore no longer register and tax them, and because the registration requirements are solely in aid of collecting the tax, the constitutional base for those requirements—*i.e.*, the power to tax—has disappeared. Accordingly, the court held the registration requirements constitutionally invalid as to firearms that the government no longer taxes.[4]

In reaching this conclusion, the court looked to the legislative history of the Act, which clearly evinces Congress's intent

that the Act regulate machineguns through a proper exercise of the taxing power rather than by banning manufacture and sale outright. The court quoted testimony to that effect from then Attorney General Homer S. Cummings, who

> "explained in detail how the [Act] would be based on the tax power. Cummings denied that machineguns could be banned, because 'we have no inherent police power to go into certain localities and deal with local crime. It is only when we can reach those things under ... the power of taxation that we can act.'"

*Rock Island Armory*, 773 F.Supp. at 119–20 (citations omitted).

The court also relied on *Sonzinsky v. United States*, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937). In that case, a firearms dealer who was prosecuted for failing to pay a dealers' license tax required by the Act argued that the tax was in actuality an unconstitutional "penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms, the local regulation of which is reserved to the states because not granted to the national government." *Id.* at 512, 57 S.Ct. at 555. The Supreme Court rejected this argument, stating that the section of the Act at issue "contains no regulation other than the mere registration provisions, which are obviously supportable as in aid of a revenue purpose. On its face, it is only a taxing measure...." *Id.* at 513, 57 S.Ct. at 555. As pointed out in *Rock Island Armory*, the Court in *Sonzinsky* "upheld [the Act's] validity precisely because the National Firearms Act was a revenue measure only and did not purport to exercise any general criminal power not delegated to Congress by the Constitution." *Rock Island Armory*, 773 F.Supp. at 121.

■ We agree with the reasoning in *Rock Island Armory* that because the reg-

---

**4.** The government initially appealed the decision in *Rock Island Armory* but then successfully moved to dismiss the appeal. *See United States v. Rock Island Armory*, No. 91–2595, 1991 WL 224268 (7th Cir. Aug. 13, 1991).

istration requirements of the National Firearms Act were passed pursuant to the taxing power, *id.* at 119, and because after the enactment of section 922(*o*) the government will no longer register or tax machineguns, *id.* at 118, section 922(*o*) has "removed the constitutional legitimacy of registration as an aid to taxation," *id.* at 125. "Thus, § 922(*o*) undercut the constitutional basis of registration which had been the rule since *Sonzinsky.*" *Id.*

■ The government in a post-argument letter raises several objections to the *Rock Island Armory* construction of the NFA, relying on *Sonzinsky.* In so doing, the government misconstrues both *Rock Island Armory* and *Sonzinsky,* and renews specious arguments that the court in *Rock Island* properly rejected. Although thread of the government's argument is not entirely clear, it appears to be premised on a misreading of the holding in *Rock Island Armory.* Thus, the government characterizes that case as concluding that the Act "loses its constitutional validity if it has the effect of suppressing a regulated item." Government supp. letter (Nov. 22, 1991), at 3. As we have set out above, and as *Rock Island Armory* plainly holds, the registration requirements are invalid *not* because they have a regulatory effect, but because they were promulgated under the taxing power and have, after the enactment of section 922(*o*), lost their constitutional legitimacy as an aid to tax collection. To put the proposition as plainly as we are able: a provision which is passed as an exercise of the taxing power no longer has that constitutional basis when Congress decrees that the subject of that provision can no longer be taxed.

*Sonzinsky* is not to the contrary. The Court there upheld the NFA because it "on its face purports to be an exercise of the taxing power [even though] the tax is burdensome or tends to restrict or suppress the thing taxed." ·300 U.S. at 513, 57 S.Ct. at 556. Essential to this holding ·was the fact that the Act "operate[d] as a tax," that is, it was "productive of some revenue." *Id.* at 514, 57 S.Ct. at 556.[5] *Sonzinsky* thus holds that an Act which produces tax revenue is a valid exercise of the taxing power, even though it also has a regulatory effect. This is not to say, however, as the government urges, that the measure remains constitutional under the taxing power when its taxing purpose disappears and only its regulatory effect is left.

■ Apparently recognizing that to be upheld as a taxing measure a statute must generate some tax, the government argues that the Act still produces revenue because one who *unlawfully makes* a machinegun is assessed a tax. Government supp. letter at 4. This argument is not persuasive. The fact that some revenue may be generated by taxing the illegal *making* of a machinegun does not legitimize the registration requirements for possession and transfer at issue in the instant case. The government does not assert that it taxes the illegal possession or transfer of a machinegun. Indeed, here the government did not seek to recover a tax but to impose criminal sanctions based on the possession and transfer of the *unregistered* machinegun.

Finally, the government argues that the Gun Control Act, of which section 922(*o*) is a part, should not be viewed as repealing the National Firearms Act, citing a provision of the Gun Control Act passed in 1968 to that effect. The court in *Rock Island Armory* rejected the same government argument, observing that

---

**5.** The government cites *Sonzinsky,* 300 U.S. at 512, 513, 57 S.Ct. at 555, 556, for the proposition that "the cumulative effect of the tax imposed by the NFA on dealers, manufacturers, and importers of certain weapons and on transactions in these weapons was 'prohibitive' in effect and unmistakably disclosed the legislative purpose to regulate rather than to tax." Government

supp. letter (Nov. 22, 1991), at 3. This description of the Act, which the government attributes to the Court, is actually a recitation of the defendant's argument. *See* 300 U.S. at 513, 57 S.Ct. at 555. In fact, the Court held the Act distinguishable from those statutes it described as "a penalty resorted to as a means of enforcing the regulations." *Id.*

"the 1968 Congress cannot bind the Congress of 1986, which decided to ban transfer and possession of machineguns. P.L. 99–308, 100 Stat. 453 (May 19, 1986). Further, a Congressional declaration in 1968 does not solve a constitutional problem which arose in 1986. The ban enacted in 1986, and the government's refusal to accept registrations and tax payments, simply left the registration requirements with no constitutional basis."

773 F.Supp. at 126 (footnote omitted).

■ The government is correct that a statute is repealed by implication only when that statute and a later statute are irreconcilable. *See, e.g., Morton v. Mancari,* 417 U.S. 535, 549–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). In our view, however, that is exactly the situation here. Sections 5861(d) and (e) punish the failure to register a machinegun at the same time that the government refuses to accept this required registration due to the ban imposed by section 922(*o*). As a result of section 922(*o*), compliance with section 5861 is impossible.

Accordingly, we vacate Dalton's conviction and reverse with instructions to dismiss the indictment. In so doing, we recognize that the illegal possession of a machinegun is a most serious matter. However, it is precisely because this conduct raises such grave concerns that the government must exercise its prosecuting responsibility with care. The decision to proceed under an inapplicable statute has resulted in a constitutionally infirm conviction.

**VACATED AND REMANDED.**