**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eric Lamont AIKEN, Defendant–
Appellant.**

No. 92–5198.

United States Court of Appeals,
Fourth Circuit.

Argued July 10, 1992.

Decided Aug. 21, 1992.

Denise Benvenga, Asst. Federal Public Defender, Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, on brief), for defendant-appellant.

Andrew Clayton White, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty.), for plaintiff-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

ERVIN, Chief Judge:

Eric Lamont Aiken pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and to possessing an unregistered short-barreled shotgun, in violation of the National Firearms Act (NFA), 26 U.S.C. § 5861(d). Aiken pled guilty to the second offense only after the district court denied, in a published decision, his motion to dismiss the count. *United States v. Aiken*, 787 F.Supp. 106 (D.Md. 1992). Aiken argues that application of the NFA, a taxing statute, to his possession of the shotgun is unconstitutional because the government would not have allowed him to register the weapon and thus pay a tax. We affirm.

I.

The NFA is a comprehensive taxing scheme that regulates the manufacture, sale, and transfer of certain specially dangerous and concealable weapons ("Title II weapons"), 26 U.S.C. §§ 5801–5871. Under the NFA, the manufacturer, importer or dealer (the "maker") of a Title II weapon must register it with the Department of Treasury's Bureau of Alcohol, Tobacco, and Firearms (BATF) in the National Firearms Registration and Transfer Record (NFRTR), § 5841. In addition, the maker must pay a making tax, § 5821. A short-barreled shotgun is a Title II weapon, § 5845, and one who alters a regular shotgun to become a short-barreled one is also considered a maker, § 5845(i). The maker or subsequent transferor may thereafter transfer the weapon only pursuant to the NFA, which requires that the maker identify itself, the firearm, and the transferee, and apply for and receive approval from the BATF, § 5812. The maker or transferor must then pay a transfer tax, § 5811. The BATF will not approve transfers that are in violation of law, § 5812(a)(6). The transferee may not register an unregistered weapon; only a transferor may. *United States v. Freed*, 401 U.S. 601, 602–04, 91 S.Ct. 1112, 1114–16, 28 L.Ed.2d 356 (1971). Anyone who violates any provision of the NFA faces a fine of up to $10,000 or imprisonment of up to ten years, or both, § 5871.

On June 20, 1991, Aiken possessed an unregistered short-barreled shotgun (a Remington Winchester 12–gauge shotgun, with a barrel length of 14 inches). At that time, Prince Georges County, Maryland, police officers arrested him while he was assaulting his estranged girlfriend. Aiken had purchased the weapon when he was in the United States Army in Missouri in 1987. He did not purchase it from a person licensed under the NFA, and the maker (who had cut down the barrel length) had never registered it in the NFRTR. Aiken was also a convicted felon, having been convicted on December 21, 1990 of assault with a dangerous weapon (also a short-barreled shotgun) in the District of Columbia Superior Court. The district court, pursuant to the Sentencing Guidelines, sentenced Aiken to eight months' imprison-

ment for being a felon in possession of a firearm[1] and twenty-four months' imprisonment for violating the NFA, the two sentences to run concurrently.

## II.

Aiken contends that it is unconstitutional for the government to prosecute him under the NFA. As Aiken points out, courts have justified the NFA on taxation grounds. *See* U.S. Const. art. I, § 8 ("Congress shall have Power To lay and collect Taxes, Duties and Excises...."). This reliance is based on the Supreme Court's decision in *Sonzinsky v. United States*, 300 U.S. 506, 513, 57 S.Ct. 554, 555, 81 L.Ed. 772 (1937), which upheld the constitutionality of the NFA as a revenue-raising measure, and the NFA's legislative history. *See United States v. Rock Island Armory, Inc.*, 773 F.Supp. 117, 119–22 (C.D.Ill.1991) (describing history). Aiken maintains that the statute has no tax nexus as applied to him. He reasons that as a transferee and one subject to restrictive governmental regulations, 27 C.F.R. § 178.98, the government has made it impossible for him to register the weapon and pay a tax.[2] Aiken argues that the statute is unconstitutional since there is no enumerated constitutional power giving Congress the right to regulate firearms. *See M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

As we stated above, the NFA is part of a comprehensive scheme to levy and collect taxes upon the making and transfer of certain firearms. The NFA's regulatory provisions need only bear a "reasonable relation" to the statute's taxing purpose. *See United States v. Doremus*, 249 U.S.

86, 39 S.Ct. 214, 63 L.Ed. 493 (1919) (upholding registration requirements in Harrison Anti–Narcotics Control Act of 1914); *see also United States v. Kahriger*, 345 U.S. 22, 31, 73 S.Ct. 510, 515, 97 L.Ed. 754 (1953) (upholding taxation and registration of bookmakers; "Unless there are provisions extraneous to any tax need, courts are without authority to limit the exercise of the taxing power.") (footnote omitted), *overruled on other grounds, Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (imposing Fifth Amendment self-incrimination limit on statute). By not allowing transferees to register the guns, and thus prohibiting lawful acceptance of unregistered guns, Congress has made the guns contraband.[3] *See United States v. Black*, 431 F.2d 524, 528 (6th Cir.1970), *cert. denied*, 402 U.S. 975, 91 S.Ct. 1673, 29 L.Ed.2d 140 (1971). For this reason, if makers do not register the weapons originally, they face the possibility of being unable to sell the guns to anyone. This fact makes it more likely that makers will pay the tax in the first place. As the Fifth Circuit Court of Appeals stated in *United States v. Ross*, 458 F.2d 1144 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972):

> Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the trans-

---

1. Aiken does not appeal from the felon in possession of a firearm conviction.

2. In addition, Aiken could not possess a Title II weapon because he is a convicted felon. *See* 26 U.S.C. § 5812(a)(6) (not allowing transfer in violation of law); 18 U.S.C. § 922(g) (unlawful for felon to possess firearm). Aiken's counsel stated at oral argument that she was not relying on this fact, so we do not consider its possible relevance here.

3. In the past, Congress required the transferee, as well as the transferor, to register an unregistered Title II weapon. However, the Supreme Court held the scheme unconstitutional because

it violated the transferee's Fifth Amendment right against self-incrimination. By requiring that the transferee register the weapon, the government was also requiring that he admit to having already broken the law by buying an unregistered gun. *See Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). Congress then changed the scheme to the present one, which flatly prohibits possession of an unregistered gun. The Court approved the current statute on Fifth Amendment grounds in *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

feror on whom the tax is levied from transferring a firearm without paying the tax.

*Id.* at 1145 (footnote omitted). The statute, rationally designed to aid in the collection of taxes, is therefore constitutional under Congress' taxing power. *See United States v. Giannini,* 455 F.2d 147, 148 (9th Cir.1972).[4]

The two cases upon which Aiken principally relies, *United States v. Rock Island Armory, Inc.,* 773 F.Supp. 117 (C.D.Ill. 1991), and *United States v. Dalton,* 960 F.2d 121 (10th Cir.1992), are distinguishable. In those cases, the courts found that prosecution under the NFA of a maker and a transferee, respectively, of machine guns was unconstitutional as beyond Congress' taxing power. Congress made it illegal for anyone other than government personnel to possess or transfer a machine gun in 1986, 18 U.S.C. § 922(*o*)(1). Since the government refused to register machine guns at all, it could not receive any money through prosecuting people who made or possessed them. Thus, the courts held, there was no remaining tax nexus to support application of the NFA. In this case, by contrast, the government will still receive revenue from criminalizing possession of unregistered short-barreled shotguns, for the simple reason that the government will still allow makers to register them.

Aiken attempted at oral argument to shore up his argument in the face of this distinction by maintaining that a short-barreled shotgun is exactly like a machine gun in that no one, except for law enforcement officers, can register the weapon. To make his point he relies on the BATF implementing regulations that require, before the BATF will approve the transfer of a Title II weapon, the transferor to include a sworn statement setting forth:

    (a) The reasons why there is a reasonable necessity for [the transferee] to purchase or otherwise acquire the device or weapon; and

    (b) That such person's receipt or possession of the device or weapon would be consistent with public safety.

27 C.F.R. § 178.98; *see also* 27 C.F.R. § 179.93. On its face, there is nothing in the regulation to prohibit citizens other than law enforcement officers from receiving a short-barreled shotgun. They simply need to show that they have a reasonable necessity for acquiring the weapon and that their possession would be consistent with public safety.

These are not prohibitory regulations. The Supreme Court in *United States v. Thompson/Center Arms Co.,* — U.S. —, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), recently considered the NFA as it concerns short-barreled rifles, which the NFA treats exactly the same as short-barreled shotguns. The question the Court considered was whether a kit that can convert a pistol into a regular rifle or a Title II short-barreled rifle is subject to the NFA. The Court determined, without a majority rationale, that the kit was not subject to the NFA. — U.S. at —, 112 S.Ct. at 2110 (plurality opinion by Justice Souter, joined by Chief Justice Rehnquist and Justice O'Connor); *id.* at —, 112 S.Ct. at 2112–2113 (Justice Scalia, joined by Justice Thomas, concurring in the judgment). All members of the Court, however, assumed that the BATF would allow registration of the kit under the NFA to make a short-barreled rifle. Since we have before us no evidence to the contrary in this case, we must therefore assume that, in appropriate circumstances, the BATF would also accept registration by the maker of short-barreled shotguns. Thus, a valid distinction remains between machine guns, which are illegal for all but government officials to possess, and short-barreled shotguns, which are legal for members of the public. The fact that not everyone might be able to obtain a short-barreled shotgun, since the BATF must first approve the reasonable necessity and public safety declarations, does not invalidate the NFA as a taxing statute. In *United States v. Doremus,* 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919), the Supreme Court upheld similar restrictions in the Harrison Anti–Narcotics Control Act of 1914, an act that the Court, as it

---

**4.** One court has held that it does not violate the Equal Protection Clause not to allow transferees to validate their possession of an unregistered gun while allowing transferors to do so. *See Milentz v. United States,* 446 F.2d 111, 113 (8th Cir.1971).

has done with the NFA, justified on taxing grounds.[5] Accordingly, that Aiken may have wanted to possess the short-barreled shotgun but have been unable to secure the BATF's approval does not require that we strike down the NFA, and we decline to do so.

### III.

Because the NFA is constitutional as applied to Aiken, we affirm.

*AFFIRMED.*

---

**5.** The Court has subsequently justified the Harrison Act on interstate commerce grounds as well. *See Minor v. United States,* 396 U.S. 87, 98 n. 13, 90 S.Ct. 284, 289 n. 13, 24 L.Ed.2d 283 (1969) ("Even viewing [the Harrison Act] as little more than a flat ban on certain sales, it is sustainable under the powers granted Congress in [the Commerce Clause]."). We need not consider whether the NFA could also be justified on interstate commerce grounds. We do note that Congress based its authority to enact the NFA by analogy to its authority to enact the Harrison Act, *Nigro v. United States,* 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600 (1928) (approving Harrison Act on taxing grounds), so the NFA might also be susceptible of a Commerce Clause justification. *See* Rept. No. 1780, Committee on Ways and Means, U.S. House of Representatives, 73rd Cong., 2d Sess. 2 (1934); Rept. No. 1444, Committee on Finance, U.S. Senate, 73rd Cong., 2d Sess. 1 (1934). One circuit, without discussion, has justified the NFA on interstate commerce grounds. *See United States v. Wilson,* 440 F.2d 1068, 1069 (6th Cir.1971).