WIENER, Circuit Judge,
dissenting in part, concurring in part, and dissenting in the result:
Over a half-century ago, in 1934, Congress held hearings to determine whether it had the authority to regulate the manufacture, transfer, and possession of machine guns.[1] As these hearings predated the vast New Deal enlargement of Congress’ power under the Commerce Clause, then Attorney General Homer S. Cummings correctly explained to the gathered congressmen that Congress could not simply ban machine guns because it had “no inherent police power to [make law concerning] local crime.”[2] Only through Congress’ power to tax, explained Cummings, could machine guns be regulated.[3] Thus was born the National Firearms Act of 1934 (NFA), which imposed a tax on the manufacture and transfer of machine guns pursuant to Congress’ power to raise revenue. Indeed, when the constitutionality of the NFA was attacked, its validity was upheld by the Supreme Court “precisely because the National Firearms Act was a revenue measure only and did not purport to exercise any general criminal power not delegated to Congress by the Constitution.”[4]
Despite its subsequent acquisition of virtually unbounded power under the post-New Deal Commerce Clause, Congress waited over five decades following its 1934 adoption of the NFA before banning citizens’ possession of machine guns altogether. Section 922(o) of the Firearm Owners’ Protection Act[5] (FOPA) prohibits a private citizen from possessing or transferring a machine gun that was not made and registered before May 19,1986, unless such transfer or possession is authorized by federal or state governments or their departments or agencies.[6]
Since the enactment of FOPA, the Bureau of Alcohol, Tobacco and Firearms (BATF) “has refused to approve any application to make, transfer, and pay the $200 tax on any machine gun made after May 19, 1986.”[7] Yet the BATF continues to arrest and convict citizens like Ardoin under the NFA for not registering and paying taxes on their machine guns — even though it is legally impossible for them to do so.[8] Because I do not believe that a statute which was enacted to tax a legal activity can legitimately be mutated into a statute that criminalizes that very same activity, and because I believe that convicting citizens for violating laws with which they cannot possibly comply is fundamentally unfair, I respectfully dissent.
I hasten to add, however, that I do concur in some important pronouncements of the majority opinion. Specifically, I agree that the words “make” and “maker,” found in the NFA, are not unconstitutionally vague as applied to this case: converting a semi-auto *183 matic firearm to a fully-automatic weapon clearly constitutes “making” a machine gun. Neither do I quarrel with the trial court’s ruling that the Sentencing Guidelines — rightly or wrongly — do not ordinarily permit a reduction in sentence for first-time offender status, community service, or a history of gainful, socially-productive employment.
I cannot concur, though, in the majority’s affirmance of Ardóin’s conviction under provisions of the NFA when those provisions (1) have been totally eclipsed by section 922(o) of the FOPA, and (2) cannot be complied with due to the refusal of the government to permit compliance. I regret that the majority today elects to join what I believe to be the legally inferior side of a pre-existing circuit split on this issue. I fear that in so choosing for this circuit, the majority rejects two persuasive precedents (including one that sets forth the relevant history and purpose of the NFA in exhaustive detail)[9] in favor of embracing a third precedent which essentially holds that because Congress could re-enact the tax-based NFA as a Commerce Clause-based ban against mere possession of machine guns, we should behave as though Congress did so.[10]
In actuality, Ardoin advances three separate, alternative attacks on the viability of sections 5821, 5845, 5861(d), (e), (f), and (l), and 5871 of the NFA: 1) these sections were impliedly repealed by the enactment of section 922(o) of the FOPA, 2) the application of these sections to Ardoin’s case violates due process (i.e., is fundamentally unfair) because the law (and BATF policy) makes compliance impossible, and 3) these sections — enacted pursuant to Congress’ power to tax — have been rendered nugatory by the government’s refusal to administer or enforce them to raise any revenue whatsoever.
1. Implied Repeal of Sections of the National Firearms Act
The majority correctly notes that an earlier statute may be implicitly repealed through the enactment of a later statute when — and only when — the two statutes are irreconcilable.[11] From my vantage point, however, the efforts of the Fourth Circuit in United States v. Jones[12] and of the majority today clearly fail to reconcile sections 5821, and 5861(d), (e), and (f) of the NFA with section 922(o) of the FOPA.
Until the enactment of section 922(o) of the FOPA, a citizen could legally make, transfer, or possess a machine gun, as long as he complied with the relevant registration and tax provisions of the NFA. Simply put, since 1934 the NFA has said to such a citizen, “You may manufacture, transfer, or possess a machine gun if — but only if — you register and pay taxes on it.” Then along came section 922(o) of the FOPA — some fifty-two years later — and declared to that same citizen, ‘You may not manufacture, possess, or transfer machine guns — period.” What sense does the NFA make now? The BATF operates as though Congress has passed two separate laws each criminalizing the mere possession of machine guns, leaving the BATF with the discretion to prosecute citizens’ possession under either statute (or both). But that is not — and cannot be — the case.
There is no evidence that Congress ever adverted to the effect that the enactment of section 922(o) would have on related provisions of the NFA. But undeniably the enactment of section 922(o) did affect the NFA— enormously. Because the NFA forbids the BATF to register and accept taxes for illegal firearms,[13] the enactment of section 922(o)— which basically made the mere possession of machine guns by private citizens illegal— rendered the extensive registration and tax *184 provisions of the NFA essentially meaningless. Indeed, the NFA’s regulation of machine gun-ownership by private citizens was made instantly obsolete by the advent of the FOPA. There is no longer any place for those provisions in the present legislative scheme for regulation of most prospective machine gun-owners. Their vestigial existence on the statute books analogizes perfectly to the human appendix: no useful function whatsoever, but unlimited potential for insidious mischief.
Moreover, section 922(o) reflects Congress’ judgment concerning the correct statutory formulation and the appropriate level of punishment for mere possession of a machine gun. Thus, if we uphold the continued application of the NFA to citizens who transfer, make, and possess machine guns — even though the NFA no longer serves any revenue-raising purpose — we are altering that congressional judgment. Why then does the BATF continue to prosecute citizens under NFA solely for the possession of machine guns, rather than resorting to section 922(o), which Congress expressly designed for that purpose? Perhaps because the statutory maximum fines for violating the NFA are greater than those - provided under the FOPA.[14] More likely, BATF agents and prosecutors find it easier to get convictions under the NFA, both because it appears to have an easier mens rea requirement,[15] and because the laundry list of possible statutory violations is so very long.[16] But Congress clearly did not intend for its passage of the FOPA to transform the preexisting NFA into a more severe ban against the simple possession of machine guns, for such a mutation of the NFA makes section 922(o) of the FOPA superfluous: what the BATF is supposed to do under the FOPA can be done more easily (and with the majority’s blessing) under the “new,” transmuted NFA, which has been administratively (and now jurisprudentially) shorn of the registration and taxation provisions that once were its whole raison d’etre.
The obsolescence of the NFA provisions at issue here is also exposed by the fact that— although expressly enacted to raise revenues from private citizens — those provisions no longer raise any revenue from the possession, transfer, and making of machine guns by private citizens. The suggestion that a tax measure can somehow have continued vitality when it no longer taxes certainly tests one’s imagination. Although implied repeals are disfavored, I firmly believe that the sections of the NFA at issue here are so utterly irreconcilable with section 922(o) of the FOPA as a means of regulating private ownership of machine guns that they were impliedly repealed by FOPA’s passage: with respect to the regulation of machine guns, the latter has superseded and supplanted the former.
2. Convicting Ardoin of Violating Applicable Sections of the NFA Violates Due Process
Since the enactment of section 922(o), the BATF has — with few exceptions — refused to register or to accept the $200 tax on any machine gun made after May 19, 1986.[17] In discussing Ardoin’s demand for a new trial based on his ultimate discovery of a BATF circular which announced that the BATF would no longer register or accept taxes on machine guns,[18] the majority implies that Ardoin had the burden of proving that the *185 BATF no longer registers or accepts taxes for machine guns. I respectfully disagree.
The BATF’s refusal to register or accept taxes for machine guns is not evinced solely in the BATF circular that Ardoin was unable to locate until after his trial; such refusal is expressly mandated by law. Sections 5812 and 5822 of the NFA state categorically that applications to register the transfer or making of firearms shall be denied if the transfer, making, or possession of the firearm would be illegal.[19] As the transfer, possession, and making of machine guns by private citizens became illegal with the adoption of section 922(o) of the FOP A, sections 5812 and 5822 of the NFA clearly require the BATF to reject applications to register the transfer or manufacture of machine guns.[20] Additionally, 27 C.F.R. § 179.105 expressly restricts registration of machine guns to those authorized for use by federal, state, or local government entities.[21] Finally, other courts have found that the BATF refuses to register or accept taxes for machine guns. I can see no reason why we should not take judicial notice of this recognition.[22]
I thus find it indisputable that since May 19, 1986, the BATF has not, does not, and may not register or accept taxes for machine guns. Ardoin, presumed innocent, did not have to prove this assertion as part of his defense, for we know it to be the law. It seems inescapable to me that a private citizen literally cannot comply with the terms of sections 5821, 5845, 5861(d), (e), (f), and (l), and 5871 of the NFA no matter how sincerely he wants to comply and how hard he tries to comply, because the enactment of section 922(o) made compliance a legal impossibility.
Ardoin was convicted of violating the NFA. Specifically, he was convicted — inter alia — of making a machine gun without having filed an application to make and register the gun, of making a machine gun without having paid the making tax, and of transferring a machine gun without having filed an application to transfer the weapon. But he could not have paid the machine gun tax, because the BATF would not accept such payment. And filing applications, even on the correct form (form 1 instead of form 10 which Ardoin did try to use), would have been futile, because the BATF is required to reject those applications. Ardoin is thus being convicted of violating laws with which he could not have complied, even had he performed the proverbial hollow act and — like Luther — tacked his makeshift registration form and $200.00 to the BATF’s front door.
The majority offers two responses to Ar-doin’s dilemma: (1) Congress has the authority to choose to tax an activity even though such activity is illegal; and (2) Ardoin could have complied with the application and tax provisions of the NFA simply “by not possessing or manufacturing any post-1986 ma-chineguns.”[23] Try as I may, I cannot find either argument convincing.
The majority’s assertion that Congress has the power to tax illegal, activities is correct, but in my opinion that assertion is also irrelevant. The question here is not what Congress could have done, but what it did. I agree that, as oxymoronie as it may sound, Congress could devise a law that would both make illegal and at the same time tax the manufacture, transfer, and possession of machine guns: but Congress simply did not do that. Instead, Congress adopted the FOPA, which clearly has the effect of forbidding the government from registering and collecting taxes on illegal firearms — the exact opposite of affirmatively taxing an illegal activity.[24] To me, any discussion of what Congress *186 could have done or might yet do merely begs the question.
The majority’s “just say no” response, like that of the Fourth Circuit before it — in effect telling Ardoin that he could have avoided violation of the NFA simply “by not possessing or manufacturing any ... machine-guns” — is even more troublesome to me. I keep asking myself “why is it that each time I revisit the majority’s response I am reminded of Marie Antoinette’s advice to ‘let them eat cake’?” Such casual, dismissive responses are just not satisfactory when it comes to engaging in an activity, such as keeping and bearing arms, that arguably implicates the Bill of Rights.[25]
I do not dispute Congress’ authority to make a law prohibiting citizens from owning or possessing machine guns.[26] And that is precisely what Congress did when it enacted section 922(o) of the FOPA. I do, however, question the fairness of continuing to prosecute citizens like Ardoin for failing to register and pay taxes on their machine guns now that the government does not allow them to do so. Analogously, I acknowledge that since adoption of the Sixteenth Amendment Congress has had the authority to establish — as it has — a federal income tax. But I believe that it would violate due process for the government to continue to arrest citizens for failing to file tax returns and pay their federal income taxes if Congress were to pass a law prohibiting the government from accepting tax returns and tax payments. In other words, it is not the government’s ban on machine gun possession that here violates due process; rather, it is the government’s prosecution of citizens like Ardoin for failure to register and pay taxes on their machine guns — when the government refuses to accept registration applications and tax-payments on such firearms — that strikes me as violating due process.
I am compelled to reemphasize at this juncture that the gravamen of the NFA violations at issue here is not mere possession of an unregistered machine gun; it is the failure to register and pay taxes on that machine gun.[27] That is why section 922(o) was enacted. If the NFA could double as a naked prohibition against simple possession of an unregistered machine gun, section 922(o) would have been wholly unnecessary. Yet today we allow the BATF to ignore the NFA’s registration and taxation provisions, thereby transmuting the NFA into a second, and perhaps a more easily enforced, criminal ban on the mere possession of machine guns.
I also regret that I have been singularly unsuccessful in convincing my fellow panelists that the Supreme Court has rejected the very reasoning upon which they rely.[28] In Haynes v. United States, the government had arrested the defendant under an earlier version of the NFA for possessing an unregistered handgun.[29] The government adopted the position approbated by the majority today; namely, that the defendant’s crime was the mere possession of an unregistered firearm. The Supreme Court rejected the government’s postulate, recognizing that the criminally proscribed act consisted of two elements: possession of a firearm, and failure to register that firearm.[30] The NFA’s registration requirement,, stated the Court, “suggest[s] strongly that the perimeter of the offense ... is to be marked by the terms *187 of the registration requirement imposed.”[31] In other words, failing to register a firearm is an essential constitutive element of the substantive crime proscribed by the NFA — it is part of the actus reus defined by the NFA.
According to the Supreme Court, then, citizens do not violate the NFA solely by possessing unregistered machine guns: they must actually fail to register those weapons. And it is apparent — at least to me — that the failure to register and pay the tax on a firearm cannot be a prosecutable criminal act when the government refuses to accept the appropriate registration documents and tax payments even though the applicable registration and tax payment provisions remain “on the books.” I find neither authority nor mandate for us to rewrite the NFA to criminalize mere possession of machine guns. Yet without such an act of judicial legislation, I can see no way for us to sanction enforcement of the NFA as it applies to ownership of machine guns manufactured after May 19, 1986. Convicting Ardoin of violating statutory provisions with which he cannot comply strikes me as offending fundamental fairness and thus due process. “One simply cannot be criminally liable for failing to do an act which [one] is ... incapable of performing.” [32] For this reason, too, I believe that Ardoin’s conviction should be set aside.
3. Stripped of its Revenue-Raising Function, The NFA is Nugatory
As already noted, the NFA was passed in 1934 pursuant to Congress’ power to collect taxes.[33] To remain legitimate, however, a measure enacted under the tax power must raise some revenue.[34] As the BATF no longer registers or accepts tax payments for privately-owned machine guns manufactured after May 19, 1986, the NFA provisions at issue cannot possibly raise any revenues from private citizens (unless criminal fines are considered revenues). Such provisions have therefore ceased to be valid manifestations of Congress’ power to tax.[35]
Neither can the constitutionality of the NFA as applied to citizens who possess, make, or transfer machine guns be rescued by incanting — as did the Fourth Circuit in Jones[36] — that the Act “could” be upheld under Congress’ power to regulate interstate commerce. I am convinced that the Act could only be upheld under the Commerce Clause if the Act were expressly adopted (or now readopted) by Congress under that clause. The undeniable fact remains, though, that Congress did not enact the NFA under the Commerce Clause and has not seen fit to re-enact it under that clause in all the decades that have ensued since the NFA’s original enactment under Congress’ power to tax. Indeed, in 1934, Congress’ enactment of the NFA under its commerce power would almost certainly have been declared unconstitutional. Arguably, because the power and scope of any act of Congress depends on the enumerated power under which it is passed, a hypothetical NFA enacted under Congress’ commerce power would be an entirely different act: an act that Congress never voted on — an act that might never have passed.
In this same vein, the majority’s willingness to uphold the NFA under the Commerce Clause misses separation of powers concerns. Under classical constitutional theory, the legislature must state — as part of its *188 legislation — the particular power that authorizes it to enact the law in question. Judges should not be in the business of re-writing legislation by upholding laws on the basis of enumerated powers that are different from the ones invoked by Congress.
I am of course aware that today the enumerated-power test of a federal statute’s validity is whether “the Congress might reasonably find that the act relates to one of the federal powers.”[37] But — in my opinion— that maxim only applies to acts that are silent as to their sources of authority. In this case, there is no such silence; we know that Congress expressly passed the NFA pursuant to its power to tax and has allowed it to remain thus grounded for nearly sixty years. I have seen no evidence that Congress now intends to augment the power and scope of that act by imbuing it with the authority of the modern Commerce Clause. Moreover, it seems clear to me that if we approve this transformation, we become a party, at least by complicity, to what amounts to executive legislation: it is the Department of the Treasury’s BATF — an arm of the Executive branch — that advances this interpretation; Congress remains mute.[38] With the NFA stripped of its revenue-raising function, I would void Ardoin’s conviction on this ground as well.
For all of the foregoing reasons, I respectfully but earnestly DISSENT.

. National Firearms Act of 1934: Hearings Before the House Committee on Ways and Means, 73rd Cong., 2d Sess. 6 (1934).

. Id. at 8.

. Id.

. United States v. Rock Island Armory, Inc., 773 F.Supp. 117, 121 (C.D.Ill.1991) (emphasis added) (citing Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937), aff'g 86 F.2d 486 (7th Cir.1936)).

. Firearms Owners’ Protection Act of 1986, 18 U.S.C. § 922(o).

. Rock Island Armory, 773 F.Supp. at 119 (interpreting the FOPA).

. Id.

. Neither the BATF nor the majority indicates why the BATF continues to prosecute citizens under the NFA for mere possession of machine guns when Congress has enacted section 922(o ) of FOPA for that very purpose and when the relevant NFA provisions were enacted not to ban machine guns, but expressly to collect taxes from firearm-owning citizens.

. United States v. Dalton, 960 F.2d 121 (10th Cir.1992); Rock Island Armory, 773 F.Supp. at 121 (discussing the legislative and judicial history of the NFA).

. United States v. Jones, 976 F.2d 176, 184 (4th Cir.1992).

. Morton v. Mancari, 417 U.S. 535, 549-51, 94 S.Ct. 2474, 2482-83, 41 L.Ed.2d 290 (1974).

. 976 F.2d 176.

. See The National Firearms Act of 1934, 26 U.S.C. §§ 5812, 5822 (applications to register the transfer, making, or possession of firearms shall be denied if the transfer, making, or possession would be illegal) (emphasis added); 27 C.F.R. § 179.105.

. A person who is convicted of violating any provision of the NFA is "fined not more than $10,000, or be imprisoned not more than ten years, or both.” 26 U.S.C. § 5871. In contrast, a person who is convicted of violating section 922(o ) is fined not more than $5,000 or imprisoned not more than 10 years, or both. 18 U.S.C. § 924(a)(1)(D) & (a)(2).

. A citizen may only be convicted for knowingly violating section 922(o). 18 U.S.C. § 924(a)(2). In contrast, a citizen may be convicted under the NFA for "violating] or failing] to comply with any provision.” 26 U.S.C. § 5871.

. Section 5861 of the NFA alone lists twelve separate acts that constitute violations of the NFA. 26 U.S.C. § 5861.

. United States v. Rock Island Armory, Inc., 773 F.Supp. 117, 119 (C.D.Ill.1991); accord United States v. Dalton, 960 F.2d 121, 123 (10th Cir.1992).

. At trial the BATF consistently denied the existence of this circular. Subsequent events have revealed that the BATF’s denial was incorrect if not duplicitous.

. The National Firearms Act of 1934, 26 U.S.C. §§ 5812, 5822 (emphasis added).

. Id.

. Rock Island Armory, 773 F.Supp. at 119 (citing 27 C.F.R. § 179.105).

. See, e.g., United States v. Dalton, 960 F.2d 121 (10th Cir.1992); Rock Island Armory, 773 F.Supp. at 119.

. See ante at 184.

. Again, see 26 U.S.C. §§ 5812, 5822; 27 C.F.R. § 179.105.

.Statutes criminalizing the possession, transfer, and making of machine guns are merely malum prohibitum laws. In contrast to rape, murder, and robbery, such gun-related activities are not inherently bad; they are only technically or artificially illegal. Courts, however, must defer to Congress when it legislates pursuant to its enumerated powers. Thus, had Ardoin been properly indicted, prosecuted, and convicted under section 922(o ) of the FOPA, I would not now be dissenting. But I simply do not think that the NFA — which everyone concedes is a tax law^— can legitimately double as a per se prohibition against the possession of machine guns.

. Indeed, I would personally support well-conceived efforts to do just that.

. United States v. Dalton, 960 F.2d 121, 123 (10th Cir.1992).

. See Dalton, 960 F.2d at 123 (referring to Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968)).

. 390 U.S. at 89, 88 S.Ct. at 726.

. Id. at 95, 88 S.Ct. at 729.

. Id. at 93, 88 S.Ct. at 728; see also Dalton, 960 F.2d at 123 (for a more detailed discussion of the Haynes opinion).

. Dalton, 960 F.2d at 124 (quoting 1 W. LaFave & A. Scott, Jr., Substantive Criminal Law, § 3.3(c) at 291 (1986)).

. Rock Island Armory, 773 F.Supp. at 119-21 (citing National Firearms Act: Hearings Before the House Comm. on Ways and Means, 73rd Cong., 2d Sess. 6-19 (1934).

. See, e.g., United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953); Sonzinsky v. United States, 300 U.S. 506, 514, 57 S.Ct. 554, 556, 81 L.Ed. 772 (1937) (upholding the constitutionality of the NFA because it was "productive of some revenue”); Bailey v. Drexel, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922) (holding the Child Labor Tax Act unconstitutional because it was primarily a penalty, not a tax); United States v. Dalton, 960 F.2d 121, 124-25 (10th Cir.1992); United States v. Rock Island Armory, Inc., 773 F.Supp. 117, 119 (C.D.Ill.1991).

. Dalton, 960 F.2d at 124-25; Rock Island Armory, Inc., 773 F.Supp. at 119.

. 976 F.2d 176, 184 (4th Cir.1992).

. John E. Nowak & Ronald D. Rotunda, Constitutional Law § 3.3 (West Publishing 1991).

. When the registration requirement is severed from the NFA a new substantive crime is created — a law that originally required registration of firearms is mutated into a law that proscribes possession of firearms. See Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (holding that failure to register a machine gun is part of the substantive crime defined by the NFA). The BATF is therefore currently enforcing a different NFA than the one that was actually passed by Congress.