**UNITED STATES of America, Appellee,**

v.

**Earle R. SHEPARDSON, III and Derek P. St. Don, Defendants,**

**David Maxwell, Defendant–Appellant.**

**Docket No. 98–1368.**

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1999.

Decided Feb. 5, 1999.

Thomas A. Zonay, Rutland, VT, for defendant-appellant.

John M. Conroy, Assistant United States Attorney, Burlington, VT (Charles R. Tetzlaff, United States Attorney, District of Vermont, David V. Kirby, Chief, Criminal Division, Burlington, VT, on the brief), for appellee.

Before: JACOBS and SOTOMAYOR, Circuit Judges, and SAND,* District Judge.

PER CURIAM:

Defendant-appellant David Maxwell appeals from a judgment of conviction of the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge*). Specifically, Maxwell appeals from the district court's denial of his motion to dismiss a superseding indictment, which charged him with one count of receipt and possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d), and one count of conspiracy to possess an unregistered sawed-off shotgun in violation of 18 U.S.C. § 371. Following the district court's denial of his motion to dismiss, Maxwell entered a conditional guilty plea to the conspiracy count, reserving his right to appeal the question whether a defense of legal impossibility exists to a charge under § 5861(d), where the defendant, as a transferee, was incapable of registering the firearm. We assume without deciding that Maxwell's argument would have force in a case of true legal impossibility. Because a sawed-off shotgun is capable of being registered under the National Firearms Act, ("NFA" or "Act"), 26 U.S.C. § 5801 *et seq.*, however, we conclude that a transferee of a sawed-off shotgun can be convicted under § 5861(d) without violating due process. Therefore, we affirm Maxwell's conviction for conspiring to violate § 5861(d).

* The Honorable Leonard B. Sand, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

## BACKGROUND

The facts relevant to this appeal are undisputed. In November 1996, Maxwell's co-defendant, Earle Shepardson, gave co-defendant Derek St. Don an unregistered sawed-off shotgun. St. Don had recently been released from jail and was living in Maxwell's house in Corinth, Vermont. Approximately one week later, St. Don and Maxwell sold the shotgun to Malcolm Millette, a resident of Bradford, Vermont. St. Don subsequently asked Maxwell to retrieve the shotgun from Millette so that it could be sold to another party, Kevin Graf. In January 1997, Maxwell retrieved the shotgun from Millette and brought it back to his house. At Maxwell's request, St. Don put the shotgun in the woods approximately two hundred yards behind Maxwell's house, where it was later recovered by Bureau of Alcohol, Tobacco and Firearms ("BATF") agents on February 3, 1997. Maxwell does not dispute that the shotgun was in his possession when it was recovered by BATF agents. The record on appeal does not indicate when, where or by whom the weapon was made into a sawed-off shotgun.

On April 24, 1997, Maxwell, Shepardson, and St. Don were charged in an eight-count superseding indictment with various offenses arising from the unlawful possession of firearms. Count 7 of the indictment charged Maxwell with violating 26 U.S.C. §§ 5841, 5861(d) and 5871 by knowingly receiving and possessing a sawed-off shotgun that was not registered to him in the National Firearms Registration and Transfer Record. Count 8 of the indictment charged Maxwell, Shepardson and St. Don with violating 18 U.S.C. § 371 by conspiring to receive and possess an unregistered sawed-off shotgun.

On September 15, 1997, Maxwell brought a motion to dismiss Counts 7 and 8 of the indictment. He argued principally that as a transferee of the sawed-off shotgun, it was legally impossible for him to register the shotgun under the NFA, and thus the application of § 5861(d)'s registration require-

ment to him violated his federal due process rights. The district court denied the motion to dismiss on November 5, 1997, on the ground that the transferee of a firearm has an affirmative duty to ensure that the weapon is registered properly prior to taking possession. Maxwell subsequently entered a conditional guilty plea to the conspiracy count (Count 8), while reserving his right to appeal the denial of the motion to dismiss. This appeal followed.

## DISCUSSION

The NFA establishes a regulatory structure for taxing "firearms," a narrow class of weapons that includes machineguns, sawed-off shotguns and rifles, silencers, and dangerous destructive devices such as bombs. *See* § 5845(a)–(f); *United States v. Dodge,* 61 F.3d 142, 145–46 (2d Cir.1995).[1] The Act requires the "maker"[2] of a firearm to file an application with the BATF to make and register the firearm, secure the BATF's approval of the application, and pay a tax on the making of the firearm. *See* 26 U.S.C. § 5822. Applications to make and register a firearm "shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." *Id.*

The Act also prohibits the "transfer"[3] of a firearm unless the transferor pays a tax on the transfer and files an application with the BATF, identifying in detail the transferor, the transferee and the firearm. *See* 26 U.S.C. § 5812(a); *see also* 27 C.F.R. § 179.84. The firearm may not be transferred unless and until the BATF approves the transfer and registration of the firearm to the transferee, *see* 26 U.S.C. § 5812(a); 27 C.F.R. § 179.84, and such applications "shall

be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." 26 U.S.C. § 5812(a); *see also* 27 C.F.R. § 179.86.

Although the NFA requires the transferor to file the application and pay the associated tax, it also requires the transferee to provide certain information in connection with the application in order to effect a valid transfer. For example, if the transferee is an individual, the application must include a recent photograph of the transferee and his or her fingerprints. *See* 26 U.S.C. § 5812(a); 27 C.F.R. § 179.85. In addition, the application must be accompanied by a "certificate of the local chief of police, sheriff of the county, head of the State police, State or local district attorney or prosecutor," or other acceptable person, which certificate "shall state … that the certifying official has no information indicating that the receipt or possession of the firearm would place the transferee in violation of State or local law or that the transferee will use the firearm for other than lawful purposes." 27 C.F.R. § 179.85. The Act prohibits the transferee from taking possession of a firearm unless the BATF has approved the transfer and accepted the registration of the firearm to the transferee. *See* 26 U.S.C. § 5812(b); *see also* 27 C.F.R. § 179.86 ("The transferee shall not take possession of a firearm until the application … for the transfer filed by the transferor has been approved by the Director and registration of the firearm is effectuated to the transferee."). In addition, § 5861(d) of the NFA, under which Maxwell was charged, makes it "unlawful for any person … to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

---

1. There is no dispute that the sawed-off shotgun recovered from Maxwell's possession is a firearm under the Act. *See* 26 U.S.C. § 5845(a)(1)–(2) (defining "firearm" to include "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length"); Count 7 of Superseding Indictment (charging Maxwell with receipt and possession of an unregistered "weapon made from a Mossberg Model 395 12–gauge shotgun (Serial No. 735915) having a barrel length of less than 18 inches and an overall length of less then 26 inches").

2. The Act defines "making" to include "manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i).

3. The Act defines "transfer" to include "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." 26 U.S.C. § 5845(j).

■ Maxwell concedes that his receipt and possession of the sawed-off shotgun in this case did not comport with the requirements of the Act in that no transfer application was filed and the shotgun was not registered to him. Maxwell argues, however, that as the transferee, he was legally incapable of registering the shotgun and, therefore, he was unable to comply with the NFA. Maxwell bases his argument on *United States v. Dalton*, 960 F.2d 121 (10th Cir.1992), which involved a conviction under § 5861(d) and (e) for possession and transfer of an unregistered machinegun. A separate criminal statute prohibited the private possession or transfer of any machinegun not lawfully possessed prior to the effective date of the statute. *See* 18 U.S.C. § 922(*o*). It was undisputed in *Dalton* that the government would permit neither the registration of nor the payment of transfer taxes on machineguns covered by § 922(*o*). *See Dalton*, 960 F.2d at 122–23. The Tenth Circuit held that Dalton's prosecution under § 5861(d) and (e) violated due process because the NFA punished his failure to register the machinegun when that registration was precluded by law:

> Sections 5861(d) and (e) punish the failure to register a machinegun at the same time that the government refuses to accept this required registration due to the ban imposed by section 922(*o*). As a result of section 922(*o*), compliance with section 5861 is impossible.

*Id.* at 126. Maxwell argues by analogy that § 5861(d) cannot be applied to him because the NFA requires a transferor to register a sawed-off shotgun prior to delivery to a transferee, and thus "it was a legal impossibility for this defendant to register the firearm and comply with the registration requirement."

Initially, we note that several circuit courts have rejected the *Dalton* analysis on the ground that it is possible for a defendant to comply with both § 5861(d)'s registration requirement and § 922(*o*)'s ban on machinegun possession "by simply refusing to possess the machinegun." *United States v. Elliott*, 128 F.3d 671, 672 (8th Cir.1997) (per curiam); *accord Hunter v. United States*, 73 F.3d 260, 261–62 (9th Cir.1996) (per curiam); *United States v. Rivera*, 58 F.3d 600, 602 (11th Cir. 1995); *United States v. Ardoin*, 19 F.3d 177, 180 & n. 4 (5th Cir.1994); *United States v. Ross*, 9 F.3d 1182, 1193–94 (7th Cir.1993), *vacated on other grounds*, 511 U.S. 1124, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994); *cf. United States v. Jones*, 976 F.2d 176, 183 (4th Cir.1992). We need not consider whether *Dalton* was correctly decided, however, because *Dalton*'s rationale is inapplicable to a § 5861(d) prosecution for receiving or possessing a sawed-off shotgun, as the Tenth Circuit itself has held. In *United States v. McCollom*, 12 F.3d 968 (10th Cir.1993), the court noted that unlike the machineguns at issue in *Dalton*, there is no statutory ban on possession of sawed-off shotguns, and thus the registration of a shotgun is not legally impossible. *Id.* at 971; *see also United States v. Ridlehuber*, 11 F.3d 516, 526 (5th Cir.1993) ("[E]ven if *Dalton* is correct as to the class of machineguns made illegal by § 922(*o*), the Tenth Circuit's reasoning does not encompass short-barreled shotguns, which can be possessed legally under federal law if registered."); *United States v. Aiken*, 974 F.2d 446, 449 (4th Cir.1992) ("[A] valid distinction remains between machine guns, which are illegal for all but government officials to possess, and short-barreled shotguns, which are legal for members of the public.").

The likelihood that the BATF would not approve a particular transfer or accept the registration of a sawed-off shotgun to a particular transferee, moreover, does not make the registration of that shotgun a legal impossibility. As the Tenth Circuit observed in *McCollom*,

> [e]ven if it is unlikely that the firearm would have been accepted for registration, the defendant has cited no statute which makes the possession of short-barreled shotguns illegal. Nor has he cited any regulation which would have forbidden the BATF from registering the shotgun in 1968 or when it was made. Different from *Dalton*, the registration of this weapon was not a legal impossibility.

*McCollom*, 12 F.3d at 971 (quoting *United States v. Tepper*, 793 F.Supp. 270, 272 (D.Colo.1992)); *see also Aiken*, 974 F.2d at 449 ("The fact that not everyone might be

able to obtain a short-barreled shotgun, since the BATF must first approve the reasonable necessity and public safety declarations, does not invalidate the NFA as a taxing statute."); *cf. Rivera*, 58 F.3d at 602 (finding the reasoning of *Dalton* inapplicable where no statute banned the registration of silencers and the defendant's registration of a silencer was made impossible only because he was a convicted felon).

Likewise, the fact that Maxwell, as a transferee, was himself unable to register the sawed-off shotgun does not render § 5861(d) unconstitutional as applied to him. Section 5812(b) of the NFA expressly forbids a transferee from taking possession of a firearm unless the BATF has first approved the transfer and accepted the registration of the firearm to the transferee. *See* 26 U.S.C. § 5812(b); *see also* 27 C.F.R. § 179.86. The Act therefore places an affirmative duty on the transferee to refrain from receiving or possessing a firearm if these statutory criteria are not met. *See United States v. Dodge*, 852 F.Supp. 135, 139 (D.Conn.1994) (noting that "a transferee has an affirmative duty to ensure that a firearm is registered properly prior to taking possession"), *aff'd on other grounds*, 61 F.3d 142 (2d Cir.1995). Furthermore, although the NFA requires the transferor to file the application to transfer a firearm, it makes the transferee a necessary participant in the application process. *See* 26 U.S.C. § 5812(a); 27 C.F.R. § 179.85. The statute's requirement of action by both transferor and transferee

> encourages compliance by rendering as contraband any firearm transferred without prior registration ... [N]o transferee can "purify" the "tainted" weapon by registering it after transfer.... While defendant may dispute the fairness or efficacy of this enforcement mechanism, the requirement that a transferee must refuse to accept possession of an unregistered firearm is rationally designed to aid in the collection of taxes imposed by other provisions of the Act.

*Ridlehuber*, 11 F.3d at 527 (quoting *United States v. Aiken*, 787 F.Supp. 106, 108 (D.Md.), *aff'd*, 974 F.2d 446 (4th Cir.1992)) (citations and quotation marks omitted).

Maxwell fares no better with the argument that his conviction for conspiring to violate § 5861(d) was unconstitutional because the government failed to prove that the sawed-off shotgun was, at any time prior to the transfer to him, capable of being registered by the maker of the shotgun. He suggests that the maker—the person who sawed off the shotgun and rendered it a firearm under the Act—may have been a convicted felon who was legally incapable of registering the firearm. *See* 18 U.S.C. § 922(g)(1) (making it unlawful for convicted felons to possess firearms); 26 U.S.C. § 5822 (providing that applications to make a firearm "shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law"); 27 C.F.R. § 179.65 (providing that applications to make a firearm "shall not be approved by the Director [of the BATF] if the making or possession of the firearm would place the person making the firearm in violation of law."). Maxwell argues that if, as a matter of law, the maker could not have secured the BATF's permission to make and register the sawed-off shotgun and thus could not have paid the associated tax, the statute would have no valid revenue purpose as applied to this firearm and this defendant. We disagree.

Maxwell has cited no authority to support his position that the government must prove that a particular firearm could have been registered in order to establish a violation of § 5861(d). In fact, existing authority points to the contrary conclusion. *See United States v. Thomas*, 15 F.3d 381, 383–84 (5th Cir.1994) (rejecting argument that registrability with the BATF is an essential element of the offenses listed in § 5861(d), (e) and (i)). We believe that the lack of any statutory ban on the registration of sawed-off shotguns is sufficient evidence of the possibility of registration to satisfy due process, and the government need not meet the burden of proof that Maxwell suggests. *Cf. Rivera*, 58 F.3d at 602 (finding no due process violation where registration of silencer was not precluded by statute, but was made impossible only because defendant was a convicted felon).

## CONCLUSION

For the reasons set forth above, we hold that compliance with the registration requirement of § 5861(d) is not a legal impossibility. Accordingly, Maxwell's conviction for conspiring to violate § 5861(d) does not contravene his due process rights, and we affirm the judgment of the district court.