**UNITED STATES of America**

v.

**William E. DODGE and Edmund S. Borkoski, Defendants.**

**Crim. No. 3:94CR00018 (TFGD).**

United States District Court,
D. Connecticut.

April 20, 1994.

**136**

Christopher F. Droney, U.S. Atty., Anthony E. Kaplan, Asst. U.S. Atty., New Haven, CT, for plaintiff.

Thomas G. Dennis, Chief Federal Public Defender, John D. Maxwell, Hartford, CT, for defendants.

## RULING ON PENDING MOTIONS

DALY, District Judge.

William E. Dodge ("Dodge") and Edmund S. Borkoski ("Borkoski"), the defendants herein, jointly move[1] to dismiss the superseding indictment on the grounds that the provisions of the National Firearms Act are unconstitutional as applied in this case, and that the government's "reverse sting" operation leading to their arrest violated their due process rights. For the reasons stated below, the motions are denied.

## BACKGROUND

On January 21, 1994, Magistrate Judge Margolis issued arrest warrants for the defendants based on complaints charging them with conspiracy to receive and possess an unregistered silencer. The complaints were premised on a reverse sting operation whereby government agents allegedly transferred firearms to Dodge that were not registered under the National Firearms Act ("NFA"). The government contends that Dodge received and took possession of a gym bag containing a silencer and a pipe bomb outside of his home in Bristol, Connecticut on January 21, 1994. The firearms allegedly were delivered to him by a confidential informant who had been working for the government for several months, and who was accompanied at the time of the transfer by an undercover agent of the Bureau of Alcohol, Tobacco and Firearms.

Based on this transfer Dodge and Borkoski were charged in a superseding indictment setting forth three counts. Count One alleges that Dodge and Borkoski conspired to receive an unregistered silencer, in violation of 18 U.S.C. § 371. Counts Two and Three allege that Dodge received and possessed an unregistered silencer and an unregistered pipe bomb, respectively, in violation of the NFA, 26 U.S.C. §§ 5841, 5861(d), and 5871. The defendants now jointly move to dismiss the superseding indictment on the grounds that the provisions of the NFA are unconsti-

---

1. Defendant Borkoski moved on April 12, 1994 to join in Dodge's motions to dismiss. The Court grants Borkoski's motion to join and considers said motions to be advanced on behalf of both defendants.

tutional as applied in this case, and that the government's reverse sting operation leading to their arrest violated their due process rights. These motions will be considered *seriatim.*

## DISCUSSION

### I. Defendants' Motion to Dismiss for Failure to Charge an Offense

It is unlawful under the NFA for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Although firearms which are in the possession or under the control of the government need not be registered, *see* 26 U.S.C. § 5841(a), it remains the transferor's duty, not the transferee's, to register the firearm before a transfer. *See United States v. Freed,* 401 U.S. 601, 604, 91 S.Ct. 1112, 1115, 28 L.Ed.2d 356 (1971). The defendants assert that the NFA is constitutional only as a revenue-collection provision enacted pursuant to the taxing powers of Congress, and argue that the Act's registration requirements are lawful only insofar as they advance such revenue collection. Deft's Mem. at 2 (quoting *Sonzinsky v. United States,* 300 U.S. 506, 513, 57 S.Ct. 554, 555–56, 81 L.Ed. 772 (1937)). The defendants argue that because the government paid no transfer tax, "there was no tax nexus applicable to the transactions alleged, the registration requirements lacked any constitutional basis, and therefore, no criminal offense was committed." Deft's Mot. at 1.

The defendants cite two cases in support of this argument. *See United States v. Dalton,* 960 F.2d 121 (10th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 253, 126 L.Ed.2d 205 (1993); *United States v. Rock Island Armory, Inc.,* 773 F.Supp. 117, 118 (C.D.Ill.1991). Those courts concluded that because the registration requirements of the NFA exist solely to aid the collection of the tax on registered firearms, no constitutional basis existed for a prosecution based on receipt and possession of an unregistered firearm. *See Dalton,* 960 F.2d at 124–25; *Rock Island Armory,* 773 F.Supp. at 119–20. Both these decisions, however, involved machine guns, the possession of which is pro-

scribed by law. *See* 18 U.S.C. § 922(*o*). Each court found that, as section 922(*o*) made unlawful the possession of any machine gun manufactured after that statute's effective date in 1986, the government would not permit registration of such weapons. Accordingly, these courts found that the defendants were prosecuted for their failure to perform an impossible action, as section 922(*o*) " 'removed the constitutional legitimacy of registration as an aid to taxation.' " *Dalton,* 960 F.2d at 125 (quoting *Rock Island Armory,* 773 F.Supp. at 125).

This analysis has not been adopted by the Second Circuit and has been rejected by other courts considering the issue. Indeed, the Seventh Circuit subsequently overturned the holding in *Rock Island Armory,* on which the *Dalton* court principally relied. *See United States v. Ross,* 9 F.3d 1182, 1194 (7th Cir.1993), *vacated and remanded on other grounds,* — U.S. —, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994); *see also United States v. Jones,* 976 F.2d 176, 183 (4th Cir.1992) (rejecting *Dalton* and holding that defendant could comply with both § 922(*o*) and the NFA by simply refusing to possess machine guns), *cert. denied,* — U.S. —, 113 S.Ct. 2351, 124 L.Ed.2d 260 (1993).

The *Dalton* and *Rock Island Armory* decisions also are inapplicable to the instant action because they dealt specifically with the issue whether the passage of section 922(*o*) repealed the registration requirements of 26 U.S.C. § 5861 as they relate to machine guns. The defendants herein are charged with conspiring to possess and possessing not a machine gun but a silencer and a pipe bomb, and no statutory provision categorically prohibits the possession of these latter types of devices. *See United States v. McCollum,* 12 F.3d 968, 970–71 (10th Cir. 1993) (limiting *Dalton* holding to prosecutions involving machine guns); *see also United States v. Ridlehuber,* 11 F.3d 516, 526 (5th Cir.1993) (holding *Dalton* inapplicable to case involving receipt of short-barreled shotgun); *United States v. Aiken,* 974 F.2d 446, 449 (4th Cir.1992) (same). No statutory provision therefore threatens the "constitutional legitimacy of registration as an aid to taxa-

tion." *Dalton,* 960 F.2d at 125 (quotation omitted).

■ Finally, the logic of the defendants' argument rests entirely upon the assumption that a transferee of a firearm has no obligation under the NFA. This assumption is incorrect. While the transferee himself is not able to register a firearm under the NFA, he has an affirmative duty to ensure that the weapon is registered properly prior to taking possession. *Freed,* 401 U.S. at 604–06, 91 S.Ct. at 1115–16; *United States v. Khatib,* 706 F.2d 213, 216 (7th Cir.1983). It is no defense that the transferee was unaware of the registration requirement. *United States v. Toner,* 728 F.2d 115, 126 (2d Cir.1984); *see also United States v. Brown,* 548 F.2d 204, 209 (7th Cir.1977). Indeed, the transfer of any listed firearm may occur only if a written application, providing the name, fingerprints and photograph of the transferee, has been approved by the Secretary of the Treasury. 26 U.S.C. § 5812(a)(3). On such an application the transferee must provide the certification of a local chief of police or other specified law enforcement officer, attesting that the fingerprint cards belong to the transferee and that the official "has no information indicating that the receipt or possession of the firearm would place the transferee in violation of state or local law, or that the transferee will use the firearm for other than lawful purposes." 27 C.F.R. § 179.85. Thus although the transferor must physically submit a completed application, the process of effecting a legal transfer requires participation by both parties. Indeed, the NFA encourages compliance by rendering as contraband any firearm transferred without prior registration, and no transferee can legalize a contraband weapon by registering it after transfer. "While [the] defendant may dispute the fairness or efficacy of this enforcement mechanism, '[t]he requirement that the transferee must refuse to accept possession of an unregistered firearm is rationally designed to aid in the collection of taxes imposed by other provisions of the Act.'" *Ridlehuber,* 11 F.3d at 527 (citation omitted). As a prosecution under the NFA does not depend upon proof of a tax nexus to the transferor, and as no competing statute places contradictory commands upon the

transferee, the NFA is not unconstitutional as applied in the instant case. Accordingly, the defendants' motion to dismiss for failure to charge an offense is denied.

## II. Defendants' Motions to Dismiss for Due Process Violation

The defendants also argue that the superseding indictment should be dismissed on the ground that reverse stings involving weapons prohibited under 26 U.S.C. § 5861(d) are unconstitutional. In particular, the defendants assert that as the government itself was directly responsible for their alleged crimes by providing unregistered weapons that the government could and should have registered, the prosecution of this case violates their due process rights.

As a preliminary matter the defendants correctly note that an allegation of a deprivation of due process must be raised prior to trial so that an evidentiary hearing can be held "with respect to any disputed issues of fact." *See United States v. Nunez–Rios,* 622 F.2d 1093, 1098 (2d Cir.1980). As the government does not contest the facts set forth in the defendants' motion or the attached affidavit of attorney Thomas G. Dennis, however, no such hearing is necessary. Further, the Court cannot, and need not, reach the merits of any related "entrapment" defense asserted by either defendant, which must be based upon evidence admitted at trial.

■ The Due Process Clause of the Fifth Amendment precludes a criminal conviction in cases where the government's own involvement in the offense violates principles of fundamental fairness. *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) (noting in dicta that situations may occur "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction"). The defendants' claim is distinct from the entrapment defense in that it raises a question of law for the Court, *Nunez–Rios,* 622 F.2d at 1098, and it may be available even to a defendant who was "predisposed" to commit the crime and therefore could not claim

entrapment. *See, e.g., United States v. Wylie,* 625 F.2d 1371, 1377 (9th Cir.1980) (considering due process claim of defendant for whom defense of entrapment was unavailable), *cert. denied sub nom. Perluss v. United States,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

 The claim presented by the instant motion is a narrow one: that the defendants' conduct would not have been illegal but for the government agents' refusal to register the firearms, as required by the NFA.[2] As discussed above, the defendants' claim ignores the obligations of a transferee in the registration process. *See supra* pp. 137–138. Further, it is no defense to a NFA prosecution that the transferor also violated the statute by failing to register the transfer, *United States v. Mayo,* 498 F.2d 713, 717 (D.C.Cir. 1974), or that the transferee was unaware of the registration requirement. *United States v. Brown,* 548 F.2d 204, 209 (7th Cir.1977). As a transferee has an affirmative duty to ensure that a firearm is registered properly prior to taking possession, *Freed,* 401 U.S. at 604–06, 91 S.Ct. 1112, 1115–16; *United States v. Khatib,* 706 F.2d 213, 216 (7th Cir. 1983), the government's conduct in failing to register the firearms allegedly transferred here had no effect on the defendants' prosecution under 26 U.S.C. § 5861(d). *See Toner,* 728 F.2d at 127 ("As for the argument that the Government *could* have registered the guns, we agree with the Government that the Drug Enforcement Agency *could* choose to supply buyers with sugar instead of heroin; nevertheless convictions of buyers of heroin have been consistently upheld against due process attack.") (emphasis in original) (citations omitted); *see also Mayo,* 498 F.2d at 717 ("When a purchaser of [a proscribed firearm] takes possession immediately upon purchase, and without the statutorily re-

quired approval of the transfer and registration, his offense is complete. That the transferor may also have violated the statute by failing to register the transfer, and that the result of her violation is a feature of his offense, is no justification for his illegal act. . . ."). The government's conduct therefore stops far short of violating a sense of "fundamental fairness, [nor is it] shocking to the universal sense of justice" established by the Due Process Clause of the Fifth Amendment. *Kinsella v. United States,* 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960).

## CONCLUSION

For the reasons stated below, the defendants' motions to dismiss for failure to charge an offense [# 55] and for due process violation [# 57] are each hereby DENIED.

SO ORDERED.

---

2. The defendants present no facts on which the Court could find the pervasive and overreaching nature of government conduct that has been labelled "outrageous" in other cases. *See, e.g., United States v. Twigg,* 588 F.2d 373 (3d Cir. 1978) (finding due process violation in drug distribution prosecution where government supplied necessary materials and location for drug factory, where government informant directed all production, and where defendants provided minimal assistance); *United States v. West,* 511 F.2d

1083 (3d Cir.1975) (finding due process violation in drug distribution prosecution where government informer supplied drugs to defendant for sale to government agent); *United States v. Batres–Santolino,* 521 F.Supp. 744 (N.D.Cal.1981) (finding due process violation in drug smuggling prosecution where government supplied drugs, where defendants were not involved previously in drug-related scheme, and where government informant offered extensive inducements).