# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2384

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of Nebraska
Allison Klanecky,                  *
                                   *   [UNPUBLISHED]
            Appellant.             *

_____

Submitted: March 12, 2010
   Filed:  September 13, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Allison Klanecky appeals the district court's[1] denial of his motion for acquittal after a jury found him guilty of knowingly possessing a destructive device, components for the assembly of a grenade, which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; and the district court's imposition of a $125,000 fine. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

First, Klanecky asserts that the evidence is insufficient to support his conviction and that, accordingly, his motion for judgment of acquittal should have been granted. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Lockett, 601 F.3d 837, 840 (8th Cir. 2010) (quoting United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003)). "We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Shafer, 608 F.3d 1056, 1067 (8th Cir. 2010).

Viewed in this light, the government presented evidence that Klanecky resided on rural property near Wolbach, Nebraska. Three residences and multiple outbuildings, garages, and barns were located on the property. Acting on a tip from Klanecky's ex-wife, agents of the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") executed a search warrant on this property on July 8, 2008. The agents discovered a bunker located underneath one of the residences accessible through the bathroom. The bunker contained food, supplies, racks of clothing, and bunk beds. Agents also discovered 85 grenade bodies, or "hulls," stored in ammunition cans located in the bunker. These grenade hulls had been "tapped." A grenade hull is "tapped" by threading the hole at the bottom of the grenade hull and plugging this hole with a bolt. Testimony revealed that when plugged with a bolt the grenade hulls were capable of holding explosive powder that would render them active. An ATF agent testified that grenade hulls are not typically sold with the bolt inserted. Agents also discovered reels of pyrotechnic fuse as well as fuse cut into shorter lengths. On a workbench, agents found eight unaltered grenade hulls, fuse assemblies, and a cordless drill. One of the fuse assemblies had been drilled to accommodate the pyrotechnic fuse. Agents also discovered "a couple of hundred pounds" of black powder in the bunker.

An ATF technician testified that the parts found in the bunker could be readily assembled in three to five minutes into a destructive device (i.e. an operational hand grenade) by pouring black powder into a tapped grenade hull and inserting the fuse assembly. Upon exploding, such a device would project metal fragments. According to the technician, the items discovered in the bunker meet the definition of a combination of parts readily assembled into a destructive device.

ATF agent Tully Kessler testified that when he met Klanecky at a service station at the York, Nebraska exit on Interstate 80, in order to return to Klanecky items taken from him at his arrest, Klanecky stated that he possessed the grenades in order "to blow up stumps." Shirley Sterkel, a friend of Klanecky's, testified that she was present at the this meeting and heard Klanecky make this statement to Agent Kessler.

To convict Klanecky of violating 26 U.S.C. §§ 5841, 5861(d), and 5871, the United States was required to prove beyond a reasonable doubt that Klanecky: (1) possessed components that could be assembled into a grenade; (2) knew the component parts could be assembled into a grenade; (3) intended to use the component parts as a grenade; and (4) the components were not registered to Klanecky in the National Firearms Registration and Transfer Record. Klanecky concedes that sufficient evidence was presented to the jury to establish the first and fourth elements, and in this appeal, Klanecky asserts only that insufficient evidence was presented to support a finding that he knew the component parts in his possession could be assembled into a grenade and that he intended to assemble the component parts into a grenade.

We conclude that Klanecky's knowledge and intent were amply established, considering: (1) the agents' testimony describing Klanecky's bunker and the type and location of the grenade components contained therein; (2) testimony that these components were capable of ready assembly into operable hand grenades; and (3) Klanecky's admission that he possessed hand grenades for the purpose of blowing

up stumps. Accordingly, there was sufficient evidence presented to support his conviction, and the district court properly denied the motion for a judgment of acquittal.

Klanecky also asserts that in imposing a fine of $125,000 the district court failed to consider the factors set forth in 18 U.S.C. § 3572 or United States Sentencing Commission, Guidelines Manual, §5E1.2(d) and, in particular, that the court failed to consider the fact that he does not have the ability to pay such a fine. According to Klanecky, had the district court considered these factors it would have determined he does not have the financial ability to pay the assessed fine.

We review the imposition of a fine and the determination of its amount for clear error. See United States v. Herron, 539 F.3d 881, 888 (8th Cir. 2008). After carefully reviewing the record, we conclude that the district court indeed followed the procedural requirements of section 3572(a)[2] and USSG §5E1.2(d).[3] We initially note that the fine amount was within the Guideline range. USSG §5E1.2(c)(3). Further,

[2]As pertinent to the subject offense and Klanecky's contentions in this appeal, section 3572(a) provides that "[i]n determining whether to impose a fine, and the amount . . . of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—(1) the defendant's income, earning capacity, and financial resources; [and] (2) the burden the fine will impose upon the defendant."

[3]USSG §5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." The guideline factors to be used in determining the amount of a fine are: "(1) the need for the combined sentence to reflect the seriousness of the offense . . . , to promote respect for the law, to provide just punishment and to afford adequate deterrence; (2) any evidence presented as to the defendant's ability to pay the fine . . . ; (3) the burden that the fine places on the defendant . . . ; (4) any restitution or reparation that the defendant has made . . . ; (5) any collateral consequences of conviction . . . ; (6) whether the defendant previously has been fined for a similar offense; (7) the expected costs to the government . . . ; and (8) any other pertinent equitable considerations." Id. §5E1.2(d)(1)-(7).

the presentence report ("PSR") found Klanecky's assets, including jointly owned property, to total $294,127, including real estate in Grand Island and Wolbach, Nebraska, and his net worth to be $269,127.[4] At sentencing, as mandated by section 3572(a), the district court heard argument on, considered, and discussed: the nature and circumstances of the offense; Klanecky's criminal history and characteristics; and, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and provide the defendant with needed educational and vocational training, medical care, or other correctional treatment. The court's review of the PSR, the argument Klanecky presented at sentencing, and the district court's comments at sentencing further confirm that Klanecky's income, earning capacity, and financial resources, as well as the burden that a fine would impose upon him, were also considered. Accordingly, we find that the inquiry required by section 3572(a) and section 5E1.2(d) was conducted.

Although "[i]t is incorrect for a court to impose a fine that the defendant has little chance of paying," "[t]he defendant has the burden of proving that he cannot pay the fine." United States v. Berndt, 86 F.3d 803, 808 (8th Cir. 1996). Klanecky argued at sentencing that his divorce and other personal circumstances rendered him incapable of paying a significant fine. Because he offered no evidence in support of this argument, however, he did not meet his burden of proving an inability to pay the assessed fine.

---

[4]It is true the PSR included the opinion of the United States Probation Officer that "[b]ased upon the defendant's impending prison sentence, as well as his current financial situation caused by his pending divorce, it does not appear that the payment of a fine is feasible;" however, the facts reflected in the PSR included these asset and net worth figures, and Klanecky presented no evidence to rebut these findings.

We affirm the judgment of the district court.

_____