**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDWARD WALTERS,

    Defendant - Appellant.

No. 24-2115
(D.C. No. 2:23-CR-00275-KG-1)
(D. N.M.)

_____

## ORDER AND JUDGMENT*
_____

Before **TYMKOVICH**, **MATHESON**, and **FEDERICO**, Circuit Judges.
_____

In this appeal, Edward Walters challenges the substantive reasonableness of his 72-month sentence for various weapons offenses stemming from an armed standoff he had with police. He argues the district court erred in imposing a 15-month upward variance based on facts that were captured in the applicable sentencing guideline range, which created

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

an unwarranted sentencing disparity. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm the district court's judgment.

**I**

Walters pleaded guilty to being a prohibited person in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(8) (count 1), making an unregistered firearm or explosive device, 26 U.S.C. §§ 5841, 5861(f), 5871 (count 2), and possession of a firearm or explosive device not registered with the National Firearms Registration and Transfer Record, 26 U.S.C. §§ 5841, 5861(d), 5871 (count 3). He admitted that he knew he was subject to a state-court protective order when he possessed firearms, ammunition, and two pipe bombs.

According to the presentence investigation report (PSR), Walters committed the crimes during an armed stand-off with police. His son called the police reporting that Walters was at a residence in violation of a restraining order and threatening to shoot his wife. When police arrived, they found Walters in the garage with his wife, a tactical shield, and a Kevlar helmet. His wife said he was armed; he said he "was there for an intervention and stated, '[I]t's about to go down. Get everybody out of the house,'" Aple. Br. at 2. Police removed Walters' wife and children from the home. Walters then barricaded himself inside and at one point threw a pipe

bomb outside. That prompted the police to evacuate surrounding neighbors and inform the local school district to reroute buses and lock down a school. After several hours of negotiations, police arrested Walters and searched the residence. They recovered a pistol, a rifle, two pipe bombs, and silencers. Walters admitted he built the pipe bombs, stating his "plan was 'to end the intervention by having a standoff with the Sheriff's Office.'" *Id.* at 3. He also said that he had just been released from jail for violating a restraining order that prohibited him from contacting his wife.

The PSR determined Walters' base offense level was 20. *See* United States Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(a)(4)(B). The PSR added two levels because the offenses involved a destructive device, U.S.S.G. § 2K2.1(b)(3)(B), and an additional four levels because Walters used a firearm in connection with another felony, U.S.S.G. § 2K2.1(b)(6)(B). The PSR then subtracted two levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and one level because he pled guilty, U.S.S.G. § 3E1.1(b), yielding a total offense level of 23.

The PSR assigned Walters a criminal history category of I because he had no criminal convictions or criminal history points. However, under "Other Criminal Conduct," the PSR listed four prior domestic-violence related arrests, all involving his wife. He was arrested for battery in 2012, when he admitted to shoving his wife toward their children during an

3

argument. Then he was arrested in May 2022 for assault (attempted battery on a household member) and criminal damage to property of a household member after he allegedly threw bottles at his wife's feet and struck holes in his daughter's door with a flashlight. In August 2022, he was arrested for aggravated stalking (violation of a protective order) when he was allegedly on his wife's property in violation of a restraining order. And in September 2022, he was arrested on another charge of aggravated stalking (violation of a protective order) when he was at a residence after police told him he could not be there.

The PSR also described Walters' personal history, including his military service in the regular Army and Army National Guard, where he reported that he received an Honorable discharge. Walters also denied any mental health conditions, but he was speaking to a counselor at the Veterans' Affairs office to be evaluated for post-traumatic stress disorder (PTSD). He had also been prescribed medication to help him discontinue alcohol use, but he ceased taking that medication.

With a total offense level of 23 and a criminal history category of I, Walters' advisory sentencing guidelines range was 46 to 57 months. But the PSR noted an upward departure might be appropriate under U.S.S.G. § 5K2.14 due to Walters' endangerment of the public welfare. The PSR also

determined that an upward variance might be justified when considering the 18 U.S.C. § 3553(a) factors.

For his part, Walters moved for a downward variance, arguing he was going through a difficult time with the end of his 30-year marriage, he was seeking an evaluation for PTSD, and his veteran's benefits would afford him access to mental health and substance abuse treatment. He also asserted his conduct was already accounted for and reflected in the calculation of the advisory guidelines. The government countered that a sentence at the upper end of the guidelines was appropriate based on the seriousness of the stand-off and the PSR's finding that he had a "recidivist pattern of domestic violence." R. I at 33 (internal quotation marks omitted).

The district court adopted the PSR's factual findings and guideline calculations without objection and then varied upward to impose a 72-month sentence. Walters timely appeals and contends his sentence was substantively unreasonable because the aggravating facts of his case were already captured in the underlying guidelines range and there was an unwarranted sentencing disparity with other defendants convicted of similar offenses.

## II

"We review [the substantive reasonableness of a sentence] for abuse of discretion, focusing on whether the length of the sentence is reasonable

given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Lucero*, 130 F.4th 877, 886 (10th Cir. 2025) (internal quotation marks omitted). "[W]e will reverse a [sentencing] determination only if the court exceeded the bounds of permissible choice." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (internal quotation marks omitted). We do not presume a sentencing variance is unreasonable. *Id.* Rather, "[w]e uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *Lucero*, 130 F.4th at 887 (brackets and internal quotation marks omitted). "[W]e must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Barnes*, 890 F.3d 910, 917 (10th Cir. 2018) (internal quotation marks omitted).

## A

Walters first contends his sentence is substantively unreasonable because the district court varied upward based on facts that were already captured in his sentencing guideline range. He points out that the guidelines already accounted for his use of multiple firearms, a tactical

6

shield, and destructive devices; he caused neighbors to be evacuated and a school placed on lockdown; he had served in the military; and he had a "recidivist pattern of domestic violence." Aplt. Br. at 13. This argument fails, however, because "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guideline range." *Barnes*, 890 F.3d at 921 (brackets and internal quotation marks omitted). The question is whether the district court adequately analyzed the § 3553(a) factors in explaining its sentence. *See id.* at 916 ("[T]he adequacy of the court's consideration and explanation of the § 3553(a) factors is the keystone of our analysis."). "A sentence is more likely to be within the bounds of reasonable choice when the court has provided a cogent and reasonable explanation for it." *Id.* at 917.

Here, the district court provided a comprehensive explanation for its sentence. It began by generally observing that Walters "put a lot of people in great fear for their own personal safety, not only [his] wife, [his] kids, but probably those cops that show[ed] up, even if they're just doing their jobs." R., vol. 3 at 23. More specifically, in considering Walters' history and characteristics, 18 U.S.C. § 3553(a)(1), the district court acknowledged his military service and job with the state patrol in which he saw "some very troubling things . . . that could cause trauma," R. III at 25. The district court

7

also noted it would be beneficial for him to be evaluated for PTSD. *Id.* But the district court determined the circumstances of this case were "more troubling than the face of the offenses" because he had been previously arrested four times for domestic-violence related offenses. *Id.* at 23. The district court described those arrests and noted he had been subject to protective orders that prohibited him from contacting his wife and family but he "blatantly disregarded those orders." *Id.* at 24-25. The district court also noted his "very troubling history of violence, threats of violence, and . . . conduct that was threatening." *Id.* at 25.

Additionally, the district court considered the serious and violent nature of the offense, the need to promote respect for the law, and its obligation to impose a just punishment while protecting the public. 18 U.S.C. § 3553(a)(1), (2)(A), (C). The district court explained that Walters' conduct was "egregious" and "different from similarly situated defendants charged with similar offenses." *Id.* at 26. It impacted the surrounding neighborhood and "young students in an elementary school," requiring the mobilization of "almost a full scope of local law enforcement." *Id.* The district court further explained that Walters had "manufactured two pipe bombs and stated [his] intention" was "a standoff with . . . law enforcement officers." *Id.* He also possessed multiple firearms and ammunition and he made the pipe bombs knowing he was subject to a court order that

8

prohibited him from possessing firearms. He also "refused to comply with commands to disarm [himself] and to surrender for several hours." *Id.* Under these circumstances, the district court indicated an above-guideline sentence was warranted. Given this cogent and eminently reasonable explanation, the district court did not abuse its discretion in justifying its sentence, including its variance from the applicable guidelines range.

**B**

Walters nevertheless contends his sentence results in an unwarranted disparity with other defendants convicted of similar offenses. In particular, he says he received a higher sentence than the defendants in three prior cases: *United States v. Kostich*, 197 F. App'x 753 (10th Cir. 2006), *United States v. Eaton*, 260 F.3d 1232 (10th Cir. 2001), and *United States v. Berres*, 777 F.3d 1083 (10th Cir. 2015).

The district court was obligated "to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Gall v. United States*, 552 U.S. 38, 54 (2007) (quoting 18 U.S.C. § 3553(a)(6)). But "[n]o two cases are identical, and a comparison of an individual sentence with a few counsel-selected cases involving other defendants sentenced by other judges is almost always useless." *United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015) (footnote and internal quotation marks omitted).

9

Indeed, as best we can tell from *Kostich*, *Eaton*, and *Berres*, none of these cases involved a defendant with a history of domestic violence-related arrests who was armed with firearms and pipe bombs and who also threatened to shoot his wife. None of the cases involved a defendant who barricaded himself in a home intending to engage in an armed stand-off with police. And none of those cases involved a defendant who deployed a pipe bomb in a manner that posed a grave public safety risk requiring the evacuation of a neighborhood and lockdown of a school for hours while police negotiated with the defendant to surrender.

Absent such similarities and other comparative factors, Walters fails to convince us that the district court's sentence results in an unwarranted sentencing disparity with similarly situated defendants. Moreover, the district court's explanation and application of the § 3553(a) factors to the unique and "egregious" facts and circumstances of this case show a permissible choice and resulted in a reasonable sentence.

AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge